David Halberstadter (CA 107033)
david.halberstadter@katten.com
Kristin J. Achterhof (admitted pro hac vice)
kristin.achterhof@katten.com
Mark T. Ciani (admitted pro hac vice)
mark.ciani@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: +1.310.788.4408
Facsimile: +1.310.788.4471

*Attorneys for Defendant Rag & Bone Holdings, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Miramar Brands Group, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Rag & Bone Holdings, LLC,<br><br>Defendant. | Case No. 8:26-cv-00011<br><br>**MOTION TO STAY PROCEEDINGS**<br><br>Date: July 21, 2026<br>Time: 10:00am<br>Place: Courtroom 9B |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 5

A. Rag & Bone and the Rag & Bone Miramar Collection .......... 5

B. MBG's Business .......... 6

C. MBG's Bad-Faith Campaign to Disrupt Rag & Bone's Business Relationships .......... 7

D. The SDNY Action .......... 8

E. MBG's Duplicative Action in this Court .......... 9

LEGAL STANDARDS .......... 10

ARGUMENT .......... 11

I. This Case Should Be Stayed Pursuant to the First-to-File Rule .......... 11

A. The SDNY Action Was Filed First .......... 11

B. The SDNY Action Involves the Same Parties .......... 12

C. The SDNY Action Involves the Same Issues .......... 12

II. Other Factors Support a Stay .......... 14

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 17

# TABLE OF AUTHORITIES


**Cases** **Page(s)**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir.1991) .......... 10

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) .......... 13, 14

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......... 14

*Figueroa v. Autozoners, LLC*,
2:18-cv-01106-ODW-MRW, 2019 WL 11023547
(C.D. Cal. Jan. 31, 2019) .......... 12

*Hawai'i v. Trump*,
233 F. Supp. 3d 850 (D. Haw. 2017) .......... 15

*In re Bozic*,
888 F.3d 1048 (9th Cir. 2018) .......... 10

*In re Lazar*,
237 F.3d 967 (9th Cir. 2001) .......... 14

*In re Pegasus Gold Corp.*,
394 F.3d 1189 (9th Cir. 2005) .......... 14

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
544 F. Supp. 2d 949 (N.D. Cal. 2008) .......... 13

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015) .......... 10, 11, 12, 13

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 10

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .......... 14

*Mack v. Amazon.com, Inc.*,
2:17-cv-02515-AB-RAO, 2017 WL 8220436
(C.D. Cal. Sept. 19, 2017) ........ 12

*Manier v. L'Oreal USA, Inc*,
2:16-cv-06886-ODW-KS, 2017 WL 59066
(C.D. Cal. Jan. 4, 2017) ........ 11

*MeridianLink, Inc. v. DH Holdings, LLC*,
2:10-cv-2708-ABC-JEM, 2010 WL 11512182
(C.D. Cal. June 16, 2010) ........ 13

*Netlist, Inc. v. Smart Modular, Inc.*,
8:13-cv- 0996-DOC-JPR, 2013 WL 12128691
(C.D. Cal. Nov. 26, 2013) ........ 13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ........ 10

*Rode Microphones, LLC v. FEAM GMBH*,
2:23-cv-1082-ODW-KK, 2023 WL 4873632
(C.D. Cal. July 31, 2023) ........ 13

*Rohan ex rel. Gates v. Woodford*,
334 F.3d 803 (9th Cir. 2003) ........ 10

*Slaughter v. Virgin Scent, Inc.*,
2:21-cv-2875-PSG-EX, 2022 WL 22211533
(C.D. Cal. May 31, 2022) ........ 11, 12

*Zuru LLC v. Lego Sys., Inc.*,
2:19-cv-131-DSF-AFM, 2019 WL 6998790
(C.D. Cal. July 22, 2019) ........ 13

## INTRODUCTION

This action is duplicative of a first-filed case pending in the U.S. District Court for the Southern District of New York and should be stayed pending resolution of that action. The parties in the two cases overlap and the cases concern identical issues, most importantly, whether Rag & Bone Holdings, LLC's ("Rag & Bone") use of the word "Miramar" infringes on Miramar Brands Group, Inc.'s ("MBG") claimed trademark rights. Both parties to this action have actively participated in the New York action for nearly six months. Before this action was even filed, the New York court had granted defendant Rag & Bone's motion for a temporary restraining order ("TRO") prohibiting MBG from interfering with its business. Prior to serving the Complaint in this action, the New York court supervised expedited discovery, conducted a full-day evidentiary hearing in connection with Rag & Bone's motion for a preliminary injunction, and is currently considering multiple motions made by the parties in that case. Judicial economy favors granting a stay pending the outcome of the much more advanced New York action. A stay would also eliminate the risk of inconsistent rulings. There is no legitimate reason why a stay should not be granted.

* * *

Rag & Bone is a premium fashion company known for its high-end contemporary apparel. For more than thirteen years, one of Rag & Bone's most successful product lines has been its "Miramar" collection, which employs a distinctive trompe l'oeil[1] printing technique that transforms fabrics such as terry cloth and silk to resemble denim, cable-knit, and other textured materials. During that time, Rag & Bone extensively marketed and promoted the Rag & Bone Miramar Collection (also referred to as the "Collection"), investing

[1] French for "deceive the eye."

millions of dollars in advertising and generating substantial consumer recognition and goodwill associated with its product line.

Despite Rag & Bone's longstanding and uninterrupted sale and promotion of its Rag & Bone Miramar Collection, in August 2025, it received a letter from MBG—a brand management company that manages various third-party names and marks, and also claims rights in the trademark "Miramar"—objecting for the first time to Rag & Bone's use of the Miramar name for Rag & Bone's "Miramar" product line. MBG then embarked on an aggressive campaign to pressure Rag & Bone into entering a licensing agreement or, failing that, to remove the Collection from the marketplace altogether. As part of that effort, MBG communicated directly with and threatened to bring suit against Rag & Bone's retail and advertising partners, advertising service providers, and investors, disrupting Rag & Bone's business relationships and impairing Rag & Bone's ability to market and promote the Collection, including on key social media platforms.

In response, on November 30, 2025, Rag & Bone and an affiliated entity (together, "Rag & Bone") filed an action against MBG in the Southern District of New York seeking, among other relief, a declaration that Rag & Bone's use of "Miramar" in connection with its Collection does not infringe MBG's asserted trademark rights, as well as injunctive relief prohibiting MBG from interfering with Rag & Bone's sale, promotion, and distribution of products bearing the "Miramar" name. See *Rag & Bone Holdings, LLC v. Miramar Brands Group*, Case No. 1:25-cv-09937 (S.D.N.Y.) (the "SDNY Action"), S.D.N.Y. Dkt. 1.

On December 3, 2025, following a hearing and oral argument by counsel for all parties, the New York court issued an Order granting Rag & Bone's motion for a temporary restraining order. In doing so, District Judge Lorna Schofield expressly found that Rag & Bone had "raised serious questions

concerning whether MBG has a valid trademark infringement claim." S.D.N.Y. Dkt. 20 at 3. Judge Schofield further observed that: "[t]he alleged trademark as used by MBG is relatively weak"; "the parties' products at issue are sold in different places and are purchased by different consumers;" and "the products themselves are quite different in nature and quality." *Id*.

The SDNY Action has since progressed substantially. The court granted expedited discovery, MBG produced thousands of pages of documents, and multiple witnesses were deposed. On April 13, 2026, after full briefing on Rag & Bone's preliminary injunction motion, Judge Schofield conducted a full evidentiary hearing that included presentations by counsel, live testimony from five witnesses, and dozens of admitted exhibits. The parties remain actively engaged in discovery in the SDNY Action pursuant to the Amended Case Management Plan and Scheduling Order entered by the court, and are required to report to the court on a monthly basis regarding the status of their diligence in discovery. The parties also currently are awaiting rulings on: (i) Rag & Bone's motions for a preliminary injunction and for sanctions arising from MBG's misconduct, including attempts to fabricate evidence; and (ii) MBG's motion to dismiss for lack of personal jurisdiction.

Only after Rag & Bone initiated the SDNY Action—and only after the New York court entered a TRO restraining MBG from further interference with Rag & Bone's business—did MBG file the present action. Even then, MBG delayed serving its Complaint for months, waiting until after expedited discovery—including multiple depositions in New York and California—had concluded and the evidentiary hearing had been completed in the SDNY Action.

MBG now seeks to litigate in this Court the same trademark infringement and unfair competition claims that are already at issue in the SDNY Action. Both cases center on the identical question: whether Rag & Bone's use of "Miramar"

in connection with the Collection is lawful. The parties overlap, the operative facts are the same, and the legal issues are indistinguishable.

A stay would promote judicial economy, conserve party resources, and avoid the substantial risk of inconsistent rulings. In fact, permitting parallel litigation to proceed under these circumstances would serve no legitimate purpose. The New York court has already devoted substantial judicial resources to the dispute, including issuing substantive rulings, supervising extensive discovery, and conducting a full evidentiary hearing directed to the very same core issues presented here. By the time MBG obtained a waiver of service in this action, the New York court had already become deeply familiar with the factual record and merits of the parties' dispute.

MBG nevertheless refuses to dismiss or stay this action based principally on its assertion that the New York court lacks personal jurisdiction over MBG. That argument lacks merit. But even setting that aside, there is no justification for this Court to proceed simultaneously with a duplicative action while the New York court considers MBG's jurisdictional challenge and otherwise presides over identical litigation.

Moreover, Rag & Bone's ability to continue selling and promoting one of its most successful and widely recognized product lines is at stake. Absent a stay, Rag & Bone would be forced to litigate identical issues in two separate forums simultaneously and could face inconsistent judgments concerning the same marketplace conduct.

By contrast, MBG will suffer no prejudice from a stay. Its infringement and unfair competition claims can—and should—be litigated in the first-filed SDNY Action, where they constitute compulsory counterclaims. And MBG's jurisdictional challenge is currently being adjudicated in the SDNY Action, so it will not suffer any prejudice in that respect, either. Nor can MBG credibly claim any urgent need for relief from this Court. Despite months of expedited

discovery and a full evidentiary hearing in the SDNY Action, MBG has failed to identify evidence of actual consumer confusion, concrete business harm, or credible lost opportunities attributable to Rag & Bone's conduct.

Indeed, MBG's own conduct confirms the absence of any urgency. MBG requested an extension of the briefing schedule on Rag & Bone's motion for a preliminary injunction, and in doing so, asked for, and received, an extension of the TRO currently in place in the SDNY Action, despite the fact that the TRO prohibited MBG from interfering with Rag & Bone's use of "Miramar." At the same time, MBG delayed serving its Complaint in this action for nearly five months after the SDNY Action was filed. Those are not the actions of a party facing imminent or irreparable harm requiring immediate intervention from this Court.

For the reasons stated herein, this Court should stay further proceedings in this case pending resolution of the SDNY Action.

## BACKGROUND

### A. Rag & Bone and the Rag & Bone Miramar Collection

Rag & Bone is a New York-based premium retail, apparel, and fashion company that designs, distributes and sells high-quality apparel and accessories under its brand name and trademark, "RAG & BONE®." S.D.N.Y. Dkt. 1 ¶ 2; Hearing (McCormick) at 21:11-12; (Burns) at 70:15-21.[2] While Rag & Bone sells products directly to consumers through its own website and stores, it also sells its products to, and through, select retailers like Nordstrom, Saks Fifth Avenue, and other high-end department stores and boutiques. S.D.N.Y. Dkt. 1 ¶ 25; Dkt. 11 ¶ 6; Hearing (McCormick) at 27:11-15, 34:12-16. *See also* S.D.N.Y. Dkt. 10-3.

[2] "Hearing" refers to the transcript of the hearing on Rag & Bone's motion for a preliminary injunction in the SDNY Action, held April 13, 2026. *See* S.D.N.Y. Dkt. 123-1. The witness whose testimony is cited is noted in parenthetical.

Rag & Bone has sold its Collection for over 13 years. S.D.N.Y. Dkt. 1 ¶¶ 31-35, Dkt. 67 ¶¶ 3-5, Dkt. 68-1; Hearing (McCormick) at 33:1-3. The Collection uses a unique "Miramar" trompe l'oeil printing technique that transforms fabrics such as terry cloth and silk to resemble classic denim, cable-knit, and other textured materials while offering the feel of the softest lounge styles. S.D.N.Y. Dkt. 1 ¶ 32, Dkt. 11 ¶ 14; Hearing (McCormick) at 24:2-5. The Collection is Rag & Bone's most popular, most renowned product line. S.D.N.Y. Dkt. 67 ¶ 12; Hearing (McCormick) at 51:21-52:12. It is offered under the RAG & BONE® house mark as the source identifier, while using a secondary designation—the word "Miramar"—to denote a specific product line with distinct qualities. S.D.N.Y. Dkt. 1 ¶ 34, Dkt. 11 ¶ 16, Dkt. 66 ¶ 3, Dkt. 67 ¶ 3; Hearing (Burns) at 71:16-72:7.

**B. MBG's Business**

MBG's business is split into two primary segments: (i) managing third party brands, including ELLE; and (ii) managing, sponsoring, and participating in volleyball athletic events. C.D. Cal. Dkt. 1 ¶¶ 4, 6-8; Hearing (Ascher) at 131:14-15, 132:6-12; S.D.N.Y. Dkt. 54-1 ¶ 5. MBG also has its own brands—among them "King of the Beach," "Queen of the Beach," and the one at issue here, "Miramar"—which are strongly associated with volleyball, sporting activities, and a beach lifestyle. C.D. Cal. Dkt. 1 ¶ 8; S.D.N.Y. Dkt. 10-5, Dkt. 10-6 at 1, 6, Dkt. 54-1 ¶ 6; Hearing (Smith) at 119:14-17.

Under the "Miramar" brand, MBG sells apparel and other products geared toward "athleisure and sports enthusiasts," including t-shirts, sweatshirts, and volleyballs. C.D. Cal. Dkt. 1 ¶ 14; S.D.N.Y. Dkt. 54-1 ¶ 13. MBG's various Miramar products are offered at lower prices, targeted to different customers, and sold through different distribution channels than the Rag & Bone Miramar Collection. *See* S.D.N.Y. Dkt. 10 ¶¶ 18-22; *compare* S.D.N.Y. Dkt. 10-1, 10-3 *with* Dkt. 10-6.

### C. MBG's Bad-Faith Campaign to Disrupt Rag & Bone's Business Relationships

Over a decade after Rag & Bone began selling the Collection, MBG sent Rag & Bone a letter on August 28, 2025 in New York, claiming that Rag & Bone's marketing and sales of the Collection infringed MBG trademarks. S.D.N.Y. Dkt. 1 ¶ 58, Dkt. 1-4. It demanded that Rag & Bone cease using "Miramar" in connection with any goods, marketing, or promotional materials and remove all allegedly infringing products from all sales channels. In that letter, and subsequently through its New York counsel, MBG proposed that Rag & Bone enter into a multi-million-dollar licensing deal with it—including an option to subsequently purchase Miramar's trademark rights for millions more—as a condition of dropping its demands. S.D.N.Y. Dkt. 1 ¶¶ 81-84; *see also* S.D.N.Y. Dkt. 10-7. Rag & Bone made clear to MBG that there was no merit to MBG's claims, no basis for MBG's demands, and no interest in MBG's exorbitant "offer" to license its mark. *See* S.D.N.Y. Dkt. 10-8, Dkt. 10-9, Dkt. 10-10.

MBG then launched a pressure and intimidation campaign directed principally against Rag & Bone's key business partners, including Nordstrom (with stores in New York) and New York-based Saks Fifth Avenue. S.D.N.Y. Dkt. 1 ¶¶ 69-79; Dkt. 11 ¶¶ 29-30, Dkt. 10-12; Hearing (McCormick) at 39:17-40:24. MBG sent letters to these partners, asserting not only that Rag & Bone was infringing its marks but that the third parties' partnerships with Rag & Bone rendered each of *them* liable, as well. S.D.N.Y. Dkt. 1 ¶¶ 69-79, Dkt. 10-12 at 3-5; Hearing (McCormick) at 39:17-40:15. In addition to threatening third parties, MBG also repeatedly sent dozens of takedown notices to Meta demanding it remove Rag & Bone's advertisements and posts featuring its Collection with the "Miramar" name from Meta's social media platforms. S.D.N.Y. Dkt. 1 ¶¶ 70-71, Dkt. 11 ¶¶ 29-32, Dkt. 66 ¶ 8, Dkt. 76.

**D. The SDNY Action**

MBG's bad-faith campaign against Rag & Bone resulted in significant harm to Rag & Bone and threatened further irreparable harm. *See* S.D.N.Y. Dkt. 11 ¶¶ 33-41, Dkt. 76 ¶¶ 14-20. Accordingly, on November 30, 2025, Rag & Bone filed a Complaint against MBG in the Southern District of New York. *See* S.D.N.Y. Dkt. 1. In that action, Rag & Bone is pursuing claims for declaratory judgment that Rag & Bone's use of "Miramar" does not violate the Lanham Act and does not constitute unfair competition. *Id.* ¶¶ 91-116. Rag & Bone also is pursuing a claim for tortious interference based on MBG's false claims of trademark infringement and baseless demands to various business partners of Rag & Bone. *Id*. ¶¶ 117-126.

After filing its Complaint, Rag & Bone promptly moved for a preliminary injunction and TRO to enjoin MBG from further interfering with Rag & Bone's business relationships based on baseless claims of trademark infringement. S.D.N.Y. Dkt. 9. The court in the SDNY Action held a hearing on Rag & Bone's motion on December 2, 2025 (which New York counsel for MBG participated in), and thereafter entered an order enjoining MBG from: "(1) further interfering with Plaintiffs' sale, use, or distribution of goods bearing, or labeled under, the MIRAMAR name (the "Interference"), pending the outcome of Plaintiffs' application for a preliminary injunction, and (2) requiring MBG to inform third parties to whom it had previously requested or demanded action to prevent Plaintiffs' sale, use, or distribution of goods bearing, or labeled under, the MIRAMAR name, that MBG is now prohibited from engaging in the Interference until the Court's order on Plaintiffs' pending application for a preliminary injunction." S.D.N.Y. Dkt. 20.

In issuing the TRO, the court found that Rag & Bone "raised serious questions concerning whether MBG has a valid trademark infringement claim." *Id*. ¶ 8. Specifically, the court found that "[t]he alleged trademark as used by MBG is relatively weak"; "the parties' products at issue are sold in different places and are purchased by different consumers"; and "the products themselves are quite different

in nature and quality." *Id*. The New York court also found that Rag & Bone lost, and would continue to lose, "valuable opportunities to enhance brand and product recognition . . . [and] goodwill and reputation" because they could not use the longstanding name of the Collection on social media platforms, and that the balance of hardships tipped in favor of Rag & Bone. *Id.* ¶¶ 6, 9.

After the TRO was extended—at MBG's request, *see* S.D.N.Y. Dkt. 34, 36 — the parties completed briefing on Rag & Bone's motion for a preliminary injunction. S.D.N.Y. Dkt. 54, 65. The parties also engaged in document discovery and the depositions of four witnesses in California and New York. *See* S.D.N.Y. Dkt. 69. The court then held a lengthy evidentiary hearing on April 13, 2026 on Rag & Bone's motion for a preliminary injunction, which included presentations from counsel for the parties, live testimony from five witnesses, and the introduction of dozens of exhibits into evidence. *See* S.D.N.Y. Dkt. 123-1. The court ordered post-hearing briefing, which will be completed by June 2. S.D.N.Y Dkt. 115. MBG has also moved to dismiss the SDNY Action for lack of personal jurisdiction, and that motion has been fully briefed by the parties (including sur-replies). S.D.N.Y. Dkt. 64, 74, 79. The New York court has not yet ruled on MBG's motion.[3]

**E. MBG's Duplicative Action in this Court**

Five weeks after Rag & Bone initiated the SDNY Action, on January 4, 2026, MBG filed a Complaint in this Court concerning the exact same issue that is currently before the court in the SDNY Action—whether Rag & Bone's use of the name "Miramar" for its Collection infringes on MBG's "Miramar" trademark. *See* C.D. Cal. Dkt. 1. Specifically, MBG's Complaint asserts that Rag & Bone's use of the word "Miramar" to identify its product line violates the Lanham Act and constitutes unfair competition. *Id*. ¶¶ 31-48. MBG did not serve its Complaint on

---

[3] Rag & Bone's motion for sanctions against MBG is also pending. S.D.N.Y Dkt. 98. That motion is predicated on a variety of MBG misconduct, including attempts to fabricate evidence. *See id.*

Rag & Bone until April 22, 2026, nearly five months after the New York court issued the TRO. *Compare* Waiver of Service, dated April 22, 2026, C.D. Cal. Dkt. 11 *with* Order on Plaintiffs' Application for Temporary Restraining Order, dated December 3, 2025, S.D.N.Y. Dkt. 20. MBG's California Complaint is a mirror image of Rag & Bone's Complaint in the SDNY Action and purports to seek, in addition to damages, both preliminary and permanent injunctive relief that is irreconcilable with—and indeed would violate—the terms of the TRO and the ultimate relief sought in the SDNY Action.

## LEGAL STANDARDS

"District courts have inherent authority to stay proceedings before them." *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Pursuant to that authority, a district court may "transfer, stay, or dismiss a later-filed suit in deference to an earlier-filed suit" pursuant to the "first-to-file" rule. *In re Bozic*, 888 F.3d 1048, 1055 (9th Cir. 2018).

The first-to-file rule is a "doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The rule "is intended to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir.1991)) (alteration in original).

## ARGUMENT

### I. This Case Should Be Stayed Pursuant to the First-to-File Rule

To determine whether a stay is appropriate under the first-to-file rule, "courts consider the following factors: '[i] chronology of the lawsuits, [ii] similarity of the parties, and [iii] similarity of the issues.'" *Slaughter v. Virgin Scent, Inc.*, 2:21-cv-2875-PSG-EX, 2022 WL 22211533, at *2 (C.D. Cal. May 31, 2022) (quoting *Kohn L. Grp.*, 787 F.3d at 1239–40) (alteration in original). All three factors support a stay in this case.

#### A. The SDNY Action Was Filed First

Rag & Bone initiated the SDNY Action on November 30, 2025—thirty-five days before MBG filed its Complaint in this case and nearly five months before MBG obtained a waiver of service of its Complaint. That alone is sufficient to find that this factor weighs in favor of granting a stay. As this Court has explained, this factor "is straightforward. A court need only find that the action in the would-be transferee district court was filed prior to the action in the would-be transferor district court." *Manier v. L'Oreal USA, Inc*, 2:16-cv-06886-ODW-KS, 2017 WL 59066, at *3 (C.D. Cal. Jan. 4, 2017).

Moreover, in the thirty-five days between Rag & Bone initiating the SDNY Action and MBG filing its Complaint in this case, Rag & Bone filed a motion for a temporary restraining order and preliminary injunction in the SDNY Action, S.D.N.Y. Dkt. 9, the court held a hearing on that motion, S.D.N.Y. Dkt. 29, and the court entered the Temporary Restraining Order, S.D.N.Y Dkt. 20—all before MBG filed its Complaint in this case. Moreover, MBG did not obtain a waiver of service of its Complaint in this case until late April. C.D. Cal. Dkt. 11. By that time, the parties had engaged in discovery including the production of thousands of pages of documents and the depositions of four witnesses, *see* S.D.N.Y. Dkt. 69, completed briefing on Rag & Bone's motion for a preliminary injunction, S.D.N.Y. Dkt. 54, 65, and the court held a hearing on the same, in which five live witnesses gave testimony.

S.D.N.Y. Dkt. 101. In addition, the court in the SDNY Action ordered post-hearing briefing, which will be completed on June 2, S.D.N.Y. Dkt. 115, and set dates for the close of fact and expert discovery, S.D.N.Y. Dkt. 120. Thus, the parties have already taken significant steps toward resolution of these issues in the SDNY Action. It would be inefficient to repeat those steps in this Court.

As such, "because the [SDNY Action] is the earlier-filed case, and because it is likely to be resolved far sooner than the [instant] action, the chronology of the lawsuits factor weighs in favor of a stay." *Slaughter*, 2022 WL 22211533, at *2.

**B. The SDNY Action Involves the Same Parties**

The parties in this case and the SDNY Action are substantially similar for purposes of the first-to-file rule. The parties in this case are Rag & Bone Holdings, LLC and Miramar Brand Group, Inc. C.D. Cal. Dkt. 1. The parties in the SDNY Action are the same, with RB Topco Sagl (who owns certain of Rag & Bone's intellectual property) as an additional plaintiff. S.D.N.Y Dkt. 1. That easily satisfies this factor.

As the Ninth Circuit has explained, "the first-to-file rule does not require exact identity of the parties," only that the parties be substantially similar. *Kohn L. Grp.*, 787 F.3d at 1240. Thus, parties are sufficiently similar where "some of the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Mack v. Amazon.com, Inc.*, 2:17-cv-02515-AB-RAO, 2017 WL 8220436, at *2 (C.D. Cal. Sept. 19, 2017). Moreover, RB Topco Sagl's "interests in defending this action can be inferred as the same" as Rag & Bone's. *Figueroa v. Autozoners, LLC*, 2:18-cv-01106-ODW-MRW, 2019 WL 11023547, at *2 (C.D. Cal. Jan. 31, 2019). This factor is therefore satisfied.

**C. The SDNY Action Involves the Same Issues**

The issues in the two cases are also substantially similar for purposes of the first-to-file rule. In the SDNY Action, Rag & Bone asserted claims for declaratory judgment that Rag & Bone's use of "Miramar" does not infringe on MBG's mark or

otherwise violate the Lanham Act and does not constitute unfair competition. S.D.N.Y. Dkt. 1 ¶¶ 92-93, 103. Likewise, MBG's Complaint in this case asserts claims for trademark infringement and unfair competition based on Rag & Bone's use of "Miramar." C.D. Cal. Dkt. 1 ¶¶ 32, 46. The central issue in both cases—whether Rag & Bone's use of "Miramar" constitutes infringement or unfair competition—is the same. That is more than sufficient to justify applying the first-to-file rule. *See MeridianLink, Inc. v. DH Holdings, LLC*, 2:10-cv-2708-ABC-JEM, 2010 WL 11512182, at *2 (C.D. Cal. June 16, 2010) ("To support the application of the first-to-file rule, the issues in the cases need not be identical; it is enough that they involve sufficiently or substantially similar issues that the cases should be decided by the same court.").

As this Court has previously held, where the "heart of both actions is whether the allegedly infringing products infringe on any . . . intellectual property rights," the issues "substantially overlap." *Zuru LLC v. Lego Sys., Inc.*, 2:19-cv-131-DSF-AFM, 2019 WL 6998790, at *2 (C.D. Cal. July 22, 2019); *see Rode Microphones, LLC v. FEAM GMBH*, 2:23-cv-1082-ODW-KK, 2023 WL 4873632, at *2 (C.D. Cal. July 31, 2023) (applying first-to-file rule where trademark non-infringement suit was filed first in different jurisdiction and infringement suit followed in this Court); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 (N.D. Cal. 2008) (same). Indeed, "[i]t would be nonsensical for this Court to consider infringement claims" while the Southern District of New York "considers non-infringement . . . at the same time." *Netlist, Inc. v. Smart Modular, Inc.*, 8:13-cv-0996-DOC-JPR, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (patent infringement claim). The similarity of issues factor is satisfied in this case.

* * *

All three factors, therefore, support a stay. More fundamentally, a stay is also consistent with the overall purpose of the first-to-file rule, which is to "maximize 'economy, consistency, and comity.'" *Kohn L. Grp.*, 787 F.3d at 1240 (quoting *Cadle*

*Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). The parties have already spent months in the SDNY Action litigating the issues raised in this case, including participating in two hearings (one, a lengthy evidentiary hearing), and the court in the SDNY Action has already issued one ruling preliminarily finding that Rag & Bone has presented a meritorious claim for non-infringement. S.D.N.Y. Dkt. 20 ¶ 8. Litigating the same issue in this parallel proceeding—and risking inconsistent judgments—would not maximize economy, consistency, or comity; to the contrary, it would result in inefficiencies, burdensome, duplicative efforts, and potentially harmful, inconsistent legal outcomes.

## II. Other Factors Support a Stay

A stay would do more than just create efficiencies by simplifying issues of fact and questions of law. Given that the issues are identical and that Rag & Bone and MBG are parties to both lawsuits, dispositive determinations made in the SDNY Action will likely bar the parties from relitigating the same issues in this Court. More to the point, MBG is obligated to assert its claims in the SDNY Action because MBG's claims for infringement and unfair competition are compulsory counterclaims. A claim is considered a compulsory counterclaim when "'the counterclaim arises from the same aggregate set of operative facts as the initial claim.'" *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005) (quoting *In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001)). MBG's claims in this case clearly meet this test, as both sets of claims arise out of Rag & Bone's use of "Miramar." And both cases ask the relevant court to determine whether Rag & Bone's use infringes on MBG's mark or constitutes unfair competition.

There are additional reasons to grant a stay. Some courts considering applications for stays consider "'the possible damage which may result from the granting of a stay" and "the hardship or inequity which a party may suffer in being required to go forward.'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). To the

extent these factors are relevant to a motion to stay under the first-to-file rule, they favor granting a stay.

Absent a stay, Rag & Bone will be forced to defend MBG's baseless accusations of trademark infringement in two forums simultaneously. In addition to the burden on Rag & Bone's time and resources, litigating these parallel proceedings simultaneously risks subjecting both parties to inconsistent judgments. *See Hawai'i v. Trump*, 233 F. Supp. 3d 850, 854 (D. Haw. 2017) ("hardship or inequity may result to *both parties* if the Court does not pause to consider issues in the Western District of Washington appeal because of the potential for inconsistent rulings"). This is a harm that should be avoided via a stay.

On the other hand, MBG will not be harmed by a stay. The issues it presents in this case will be decided in the SDNY Action and its prosecution of this case is entirely duplicative. MBG has taken the position in the SDNY Action that it will assert a counterclaim identical to its claims in this case if its motion to dismiss for lack of personal jurisdiction is denied. *See* S.D.N.Y. Dkt. 88 at 1-2. Consequently, MBG does not stand to gain anything in this Court that it does not believe it can obtain in the earlier filed SDNY Action. In any event, MBG has not demonstrated that any relief it seeks is urgent such that a stay would cause prejudice. In the SDNY Action, MBG has failed to present any evidence of consumer confusion, loss of existing business, or credible loss of prospective business resulting from Rag & Bone's presence in the marketplace. *See* S.D.N.Y. Dkt. 98. This is unsurprising, given that, prior to MBG's August 2025 complaints, Rag & Bone had been selling the Rag & Bone Miramar Collection for over a decade, evidently without causing harm to MBG. *See supra* at 6. To the extent MBG claims harm that must be addressed with urgency, it has not acted like it—voluntarily extending the TRO in the SDNY Action, failing to assert a counterclaim of infringement, and serving its Complaint in this case nearly five months after the SDNY Action had commenced

and the TRO had been entered. Accordingly, MBG cannot show that it will be harmed by a stay of this action pending the outcome of the SDNY Action.

## CONCLUSION

For the reasons stated herein, this Court should stay further proceedings in this case pending resolution of the SDNY Action.

Respectfully yours,

Dated: May 26, 2026

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/David Halberstadter

*Attorneys for Defendant Rag & Bone, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Rag & Bone, certifies that this brief contains 4,975 words, which complies with the word limit of L.R. 11-6.1

Dated: May 26, 2026

**KATTEN MUCHIN ROSENMAN LLP**

By: */s David Halberstadter*

*Attorneys for Defendant Rag & Bone, LLC*