Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Joshua N. Osborn (SBN 317435)
jno@smlavvocati.com
**SML Avvocati P.C.**
888 Prospect Street, Suite 200
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **Miramar Brands Group, Inc.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**Rag & Bone Holdings, LLC**, a Delaware company, **Guess?, Inc.**, a Delaware corporation, **WHP Global, LLC**, a Delaware company, **Bloomingdale's, LLC**, an Ohio company, **Nordstrom, Inc.**, a Washington corporation, **Evereve, Inc.**, a Minnesota corporation, **Revolve Group, Inc.**, a Delaware corporation, **URBN US Retail, LLC**, a Delaware company, **BOP LLC**, a Wisconsin company, **Rue Gilt Group, Inc.**, a Delaware corporation, and **Couponology, Inc.**, a New York corporation,<br><br>Defendants. | Case No. 8:26-cv-00011-MRA-BFM<br><br>**NOTICE AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM IN SUPPORT**<br><br>Date: July 21, 2026<br>Time: 10:00 a.m.<br>Ctrm: 9B<br><br>Honorable Mónica Ramírez Almadani |

PLEASE TAKE NOTICE that on July 21, 2026 at 10:00 a.m. before the Honorable Mónica Ramírez Almadani in Courtroom 9B of the United States District Court for the Central District of California (Southern Division), Plaintiff

Miramar Brands Group, Inc. ("MBG") will move for a preliminary injunction order preventing Defendant Rag & Bone Holdings, LLC ("Rag & Bone") from any further infringing use of MBG's incontestable, federally-registered trademark rights in and to its MIRAMAR® brand.

This Motion is based upon this Notice and Memorandum herein, as well as the pleadings and other papers on file in this action, including the declarations and exhibits filed herewith, and such further evidence or argument as may be presented at or before the hearing of this Motion. Pursuant to L.R. 7-3, this Motion is exempt from the conferral requirements. *See id.* (applies "except in connection with . . . applications under Fed. R. Civ. P. 65 for temporary restraining orders or preliminary injunctions").

## MEMORANDUM

The facts germane to this Motion are quite simple and straightforward.[1] Plaintiff MBG is a small California company which ***for several decades*** has used in commerce, and licensed to others, many brands protected by registered and common law trademark rights. Among MBG's trademark rights is the MIRAMAR® brand for apparel, which is the subject of trademark registrations including (a) incontestable U.S. Trademark Registration No. 3,891,117 ("the '117 Registration") for MIRAMAR® (stylized), and (b) incontestable U.S. Trademark Registration No. 3,891,118 ("the '118 Registration") for MIRAMAR®. Both of these registrations cover International Class 25 for a broad assortment of apparel and clothing items, including "swimwear, tops, shirts, T-shirts, sweatshirts, tank tops, vests, blouses,

---

[1] The detailed factual background of this action is summarized at length in Plaintiff MBG's Verified Amended Complaint (and exhibits) which is hereby incorporated herein by this reference, and the declarations and exhibits filed herewith. *See* ECF Nos. 22 (Amended Complaint or "FAC"), 23-1 (Lobbin Declaration) and 23-10 (Lajoux Declaration).

coats, overcoats, suits, jackets, sports coats, sweaters, pullovers, jumpers, skirts, dresses, body suits, leotards, leggings, pants, trousers, sweatpants, shorts, gloves, socks, underwear, and belts; headwear, namely, caps, hats, and visors; footwear, namely, shoes and sandals, sleepwear, athletic uniforms, in Class 25." *See* ECF No. 22-2 and 22-3 (FAC Exs. B-C). MBG also owns trademark rights in and to the MIRAMAR name as used in connection with MBG's other goods and services, including but not limited to brand licensing services.

Without license or permission from MBG (or even prior notice), only recently has Defendant Rag & Bone begun using the name MIRAMAR as a new brand for its apparel items. The recency and extent of Rag & Bone's widespread trademark/brand use of MIRAMAR is made clear by a mountain of empirical evidence, as well as its own trademark application filed June 9, 2025 for RAG & BONE / MIRAMAR (Serial No. 99224195) in connection with "Retail store services and online retail store services in the field of clothing, accessories, and footwear." Importantly, Rag & Bone did not claim any prior trademark use of the MIRAMAR brand before mid-2025; instead, the application asserted only an "intent to use" it under 15 U.S.C. § 1051(b). *See id.* (stating under oath only that Rag & Bone "has a bona fide intention to use the mark in commerce").[2]

Even more importantly, on October 30, 2025 the U.S. Patent and Trademark Office ("USPTO") ***rejected Rag & Bone's trademark application based on MBG's '117 and '118 registrations for MIRAMAR®***, finding specifically in a detailed rejection that Rag & Bone's use of its proposed MIRAMAR trademark would result in a "likelihood of confusion" among consumers—that is, trademark infringement. *See* ECF No. 22-27 (FAC Ex. AA). To date, Rag & Bone has not yet even

[2] MBG had no notice or knowledge of Rag & Bone's commercial use of MIRAMAR as a brand and intended trademark until late 2025, a few months after Rag & Bone began its nationwide re-branding campaign for its apparel. *See* ECF No. 22 at 12.

responded to the merits of the rejection. Instead, Rag & Bone has tried to side-step the Trademark Attorney experts at that USPTO by (a) suspending its trademark application, (b) continuing to market, advertise and promote its new MIRAMAR brand online and at retail all over the nation, and (c) suing MBG in New York federal court for alleged unfair competition and tortious interference based on the actions of Meta and Amazon "taking down" a number of Rag & Bone's listings using the MIRAMAR brand, based on the trademark policing policies of those online platforms. *See* ECF No. 22 at 32.

MBG has moved to dismiss the New York action for a lack of personal jurisdiction, which motion is pending along with Rag & Bone's request to proceed on the merits and consider a preliminary injunction against any takedowns. Because of the irreparable harm foisted on MBG, however, this California action should proceed quickly. Specifically, the irreparable harm to MBG's MIRAMAR® brand in the consumer marketplace is quickly becoming irreversible because of the overwhelming budget and presence of Rag & Bone's widespread marketing, advertising and promotion of its intended new MIRAMAR brand online and at retail. The magnitude of Rag & Bone's presence has all but disappeared the visibility of MBG's MIRAMAR® brand online and at retail, which is quickly disappearing from the minds of consumers as well. The infringing use by Rag & Bone has been so pervasive that MBG immediately started losing its visibility and brand association across major online platforms including Amazon, Google, eBay, Yahoo, Meta, TikTok and other digital search and commerce channels (for example in search results for "MIRAMAR" and "MIRAMAR + CLOTHING"). *See* ECF No. 22 at 33-34. This kind of "reverse confusion" is a particularly harmful species of trademark infringement, which can be remedied only via preliminary injunction.

A preliminary injunction is a particularly essential remedy for trademark infringement, because of the need to protect the consuming public from brand confusion (not just protecting the interests of a private plaintiff), and the need to

protect the trademark owner from evisceration of its distinctiveness in the minds of those same consumers in the marketplace:

> Preliminary injunctions are ***routinely granted*** in cases involving trademark infringement. The principle "that trademark infringement causes irreparable injury and necessitates immediate injunctive relief" is well settled and "is universally recognized in the courts of [the Ninth] circuit."

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*, No. 20-4773, 2020 WL 5199434, at *6 (N.D. Cal. Aug. 17, 2020) (emphasis added) (quoting *Steinway & Sons v. Robert Demars & Friends*, 1981 WL 40530, *7 (N.D. Cal. Jan. 28, 1981)).

**Legal Standards**

As this very Court reiterated recently, "Injunctive relief is the remedy of choice for trademark and unfair competition cases." *Otis Elevator Co. v. Otis Elevator Co., LLC*, No. 25-9456, 2026 WL 980483, at *7 (C.D. Cal. Apr. 7, 2026) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). A preliminary injunction is warranted on a showing of (a) likelihood of success on the merits, (b) irreparable harm in the absence of preliminary relief, (c) the balance of equities favoring the movant, and (d) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008). In the Ninth Circuit, "[S]erious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

Likely success on a claim for trademark infringement is demonstrated on proof that (a) plaintiff owns the trademark, and (b) defendant's use of the mark is likely to cause consumer confusion. *See Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012). As to ownership, MBG's federal trademark registrations are "prima facie evidence of the validity of the mark, the registrant's

ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)). On the question of likely consumer confusion, this Court considers the eight *Sleekcraft* factors: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Doctor's Best, Inc. v. Nature's Way Prods., LLC*, 143 F.4th 1101, 1110 (9th Cir. 2025); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). The *Sleekcraft* factors are "illustrative rather than exhaustive," are "best understood as simply providing helpful guideposts," are "intended as an adaptable proxy for consumer confusion, not a rote checklist," and plaintiff "need not satisfy every factor." *See Baron App, Inc. v. OpenAI, Inc.*, No. 25-9268, 2026 WL 447428, at *4 (N.D. Cal. Feb. 14, 2026) (granting preliminary injunction on 5 of 8 factors). Here, the USPTO already has performed this analysis and found a likelihood of confusion.

Upon showing a likelihood of success on trademark infringement, the owner of the trademark is "entitled to a rebuttable presumption of irreparable harm." *See* 15 U.S.C. § 1116(a); *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 694 (9th Cir. 2022) (same). To avoid the balance of hardships favoring the plaintiff, a defendant must show more than commercial hardship resulting from "an activity which has been shown likely to be infringing," which argument "merits little equitable consideration." *See Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995); *Chongqing Quilong Tech. Corp. v. Xinghai Hi-Tech (Shenzhen) Tech. Co.*, No. 26-61, 2026 WL 851322, at *3 (C.D. Cal. Jan. 9, 2026) (noting defendant's "calculated risk" of infringement supports balance of hardships favoring plaintiff) (citing *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581

(Fed. Cir. 1983) (reversing denial of preliminary injunction where defendant was aware of patents and "took a calculated risk that it might infringe those patents")). Finally, "An injunction that prevents consumer confusion in trademark cases . . . serves the public interest." *American Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. Appx. 633, 636 (9th Cir. 2013) (citing *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)).

Courts in the Ninth Circuit have consistently granted (and affirmed) preliminary injunctions in trademark cases where, as here, a defendant is newly using the same brand name in connection with goods in the same marketplace, particularly where (as here) actual confusion already has occurred. *See, e.g., Baron App, Inc. v. OpenAI, Inc.*, 820 F. Supp. 3d 881, 904 (N.D. Cal. 2026) (enjoining continued use of registered CAMEO® trademark including because plaintiff "was asked 'on multiple occasions' if Cameo 'had partnered with OpenAI'"); *Shopnomix LLC v. Ad.com Interactive Media Inc.*, No. 25-10802, 2025 WL 3271459, at *3 (C.D. Cal. Nov. 20, 2025) (granting TRO enjoining defendant's use of SHOPNOMIX and PRONOMIX marks); *Lashify, Inc. v. Urban Dollz LLC*, No. 22-6148, 2022 WL 18281527, at *12 (C.D. Cal. Dec. 14, 2022) (granting preliminary injunction against defendant's use of "registered trademark for BONDAGE® for . . . the same type of good in the same marketplace"); *Maxim Integrated Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1031 (N.D. Cal. 2009) (granting preliminary injunction where "My-iButton" incorporates "i Button" [mark] in its entirety"); *Electropix v. Liberty Livewire Corp.*, 178 F. Supp. 2d 1125, 1132 (C.D. Cal. 2001) (granting preliminary injunction for use of same mark LIVEWIRE including because "consumers doing business with Plaintiff might mistakenly believe they are doing business with Defendants, the primary concern in 'reverse confusion' cases"); *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1286 (C.D. Cal. 1997) (granting preliminary injunction including because "inability to control Defendants' product is inherent").

**Likely Success on the Merits Is Crystal Clear**

As the expert Trademark Examining Attorney (Mr. Philip Liu) at the USPTO has determined already, MBG is likely to succeed on its trademark infringement claim because Rag & Bone's adoption and use of MIRAMAR for its apparel created "a likelihood of confusion with [MBG's '117 Registration and '118 Registration for MIRAMAR®]." ECF No. 22-27 at 3. Consistent with the *Sleekcraft* factors, the Trademark Examining Attorney explained as follows:

> Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). . . . Although not all *du Pont* factors may be relevant, ***there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services***. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP § 1207.01.

*Id.* at 4 (emphasis added). Each of the eight factors under the *Sleekcraft*/*Polaroid* analysis weighs strongly in favor of MBG and Rag & Bone's infringement of the incontestable MIRAMAR registrations owned by MBG. *See Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.*, No. 01-1771, 2002 WL 570681, at *4 (E.D. Cal. Mar. 20, 2002) (eight factors "substantially the same" under *Sleekcraft* and *Polaroid*).

Concerning the first factor—the strength of the registered mark—MBG's registrations for its MIRAMAR® trademarks are longstanding and incontestable. As such, the trademarks are presumed to represent, and do represent, strong trademark rights. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205, 105 S. Ct. 658, 667, 83 L. Ed. 2d 582 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement . . . .").

Concerning the second factor—the proximity or relatedness of the goods—as the USPTO already determined, "The marks create the same commercial impression and the attached evidence illustrates that the goods and services are commercially related and are likely to be encountered together in the marketplace by consumers. Accordingly, consumers are likely to be confused and mistakenly believe that the products and services originate from a common source." *See* ECF No. 22-27 at 10.

Concerning the third factor—the similarity of the marks—as the USPTO already determined, Rag & Bone's use of MIRAMAR is very similar, including because it "creates a confusingly similar commercial impression because consumers are likely to believe that registrant's mark is a condensed form of applicant's mark or that registrant has begun offering similar goods and services under another iteration of its registered mark." *See id.* at 5.

Concerning the fourth factor—evidence of actual confusion—several reasonable consumers and industry professionals already have been confused or have witnessed confusion due to Rag & Bone's extensive use of the MIRAMAR name which was mistakenly believed to be associated with MBG's longstanding and distinctive MIRAMAR® brand. *See* ECF No. 23-1 through 23-9 (Lobbin Declaration, Exs. 1-8). For example, several individuals including Mr. Theodore Jaffrey, Mr. Moses Khuu and Mr. Dale Waters have contacted MBG and asked about Rag & Bone's "apparent" use of MBG's MIRAMAR® brand. *See* ECF No. 23-2 (Ascher Decl. Ex. J); ECF No. 23-4 (Jaffrey Decl. ¶¶ 2-14); ECF No. 23-7 (Khuu Decl. ¶¶ 2-7); ECF No. 23-9 (Waters Decl. ¶¶ 2-11). The examples of real

consumer confusion are compounding as time passes, proving the real irreparable brand harm that MBG is experiencing and suffering. *See* ECF No. 23-6 (Kusnetz Decl. ¶¶ 2-12); ECF No. 23-8 (Lorber Decl. ¶¶ 2-8); ECF No. 23-3 (Smith Decl. ¶¶ 2-15); ECF No. 23-5 (Valero Decl. ¶¶ 2-12). Even a senior executive of Nordstrom—a retail partner with whom MBG has maintained a trusted relationship for decades—contacted MBG directly to question why infringement issues had arisen at all, reflecting confusion and concern generated by Rag & Bone's conduct. *See* ECF No. 23-2 (Ascher Decl. at ¶ 26).

Concerning the fifth factor—the marketing channels used—the primary marketing channels for both parties are online channels including Google, Meta and Amazon, driving search results for MIRAMAR to the consumer's point of purchase. As the USPTO explained, the parties' products "are likely to be encountered together in the marketplace by consumers." *See* ECF No. 22-27 at 10. Concerning the sixth factor—the type of goods and the degree of care likely to be exercised by the purchaser—the parties' products are apparel primarily, which although not inexpensive, do not compel most consumers to exercise inordinate brand scrutiny to the extent needed to avoid a likelihood of confusion. *See* ECF No. 22 at 46.

Concerning the seventh factor—the defendant's intent in selecting the mark—while intent is difficult to ascertain directly, the circumstantial evidence here allows for a strong inference of intent, including the fact that Rag & Bone has proceeded recklessly in adopting and using the name MIRAMAR in the face of not only MBG's conflicting trademark MIRAMAR® registrations, but the experts at the USPTO have specifically advised Rag & Bone that there is a likelihood of confusion, and therefore likely infringement.

Concerning the eighth factor—the likelihood of expansion of the product lines—because MBG's primary business model is licensing its brands including MIRAMAR®, MBG is inherently likely to expand its MIRAMAR® brand into other new markets. *See id.*

Therefore, MBG's likely success on the merits of its trademark infringement claim is undeniable. Anything less would be irreconcilable with the conclusion of likelihood of confusion as determined already by Trademark Examining Attorney (Mr. Liu) at the USPTO.

**Irreparable Harm Already Has Occurred And Is Accelerating**

Based on its likely success on the merits of proving trademark infringement by Rag & Bone, MBG faces irreparable harm and a decidedly favorable balance of hardships. Under the Lanham Act, MBG is entitled to a rebuttable presumption of irreparable harm upon a showing of likelihood of success on the merits. *See* 15 U.S.C. § 1116(a). Even notwithstanding the presumption, MBG's loss of control over the MIRAMAR® trademark's distinctiveness, identity and goodwill, including the actual consumer confusion and marketplace displacement described hereinabove, is not readily quantifiable and constitutes irreparable harm. Because of Rag & Bone's much greater presence in the marketplace, MBG also has suffered and continues to suffer irreparable damage to customer relationships. *See* ECF No. 23-2 (Ascher Decl. ¶¶ 25-28); ECF No. 23-5 (Valero Decl. ¶ 12) ("Unless resolved, the continued public association between Rag & Bone and the MIRAMAR® brand will continue to interfere with MBG's licensing activities and impair the ability of brand representatives like myself to effectively market and license the MIRAMAR® brand."); ECF No. 23-6 (Kusnetz Decl. ¶ 9) ("As a result of this confusion and uncertainty, and because Rag & Bone's market conduct created doubt regarding who truly controlled the MIRAMAR name in commerce and particularly in the clothing space, I determined that I could not proceed with the MBG transaction until the trademark issue was resolved. This resulted in a delay of a fully-executed term sheet and disruption to ongoing business planning and investment timelines.").

Although not required or necessary (particularly after applying the required presumption), the fact of irreparable harm under these circumstances also is buttressed by expert evaluation and opinion. *See* ECF No. 23-10 (Lajoux

Declaration); *see also Daybreak Game Co., LLC v. Takahashi*, No. 25-1489, 2025 WL 3443159, at *4 (S.D. Cal. Dec. 1, 2025) ("[T]he rules of evidence, including the *Daubert* standard, can be applied less strictly during preliminary injunction proceedings."); *Repro-Med Sys., Inc. v. EMED Techs. Corps.*, No. 13-1957, 2017 WL 2446458, at *4 (E.D. Cal. June 6, 2017) (expert declaration concerning market share correlation confirmed irreparable harm). As Expert Lajoux discusses, her review of the facts and circumstances and evidence presented on this Motion confirms that MBG faces irreparable harm in many forms, including threatened losses of (a) prospective customers and licensees for its MIRAMAR® brand, (b) goodwill connected to its established MIRAMAR® brand, (c) revenues, (d) market share, (e) reputational harm, (f) diminished online presence, and ultimately (g) having its MIRAMAR® brand completely eviscerated and "swallowed" entirely by Rag & Bone's dominant and widespread infringing use of its new MIRAMAR brand. *See id.* ECF No. 23-10 at 3-11 ¶¶ 5-25.

**The Balance of Hardships Strongly Favors MBG**

As referenced *supra*, upon a finding of likely success on the trademark infringement allegations, the commercial hardship to a likely infringer resulting from a "calculated risk" of infringement "merits little equitable consideration." *See supra* (citing *Triad* and *Chongqing* cases); *see also Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

**The Public Interest Favors Stopping Consumer Confusion**

As referenced *supra*, "An injunction that prevents consumer confusion in trademark cases . . . serves the public interest." *See supra* (quoting *American Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 F. Appx. 633, 636 (9th Cir. 2013) (citing *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)). Specifically, the relevant consuming public has a strong interest in

not facing confusion in purchasing decisions or in brand reputation and recognition, while the public at large has an interest in protecting trademark rights generally.

**Conclusion**

Based on the foregoing, Plaintiff MBG respectfully requests that this Court should enjoin Defendant Rag & Bone from any further commercial use of MBG's registered and incontestable trademark rights in and to the brand MIRAMAR in connection with any goods or services relating to apparel or brand licensing.

Respectfully submitted,

Dated: June 8, 2026

**SML AVVOCATI P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 11-6.2 ("Certificate of Compliance"), the undersigned counsel for Plaintiff certifies hereby that the foregoing document complies with the type-volume limitation of L.R. 11-6.1. Specifically, the undersigned certifies that the foregoing brief contains 3873 words, which complies with the 7,000 word limit of L.R. 11-6.1.

/s/ Stephen M. Lobbin

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2026, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin