Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Joshua N. Osborn (SBN 317435)
jno@smlavvocati.com
**SML Avvocati P.C.**
888 Prospect Street, Suite 200
San Diego, California 92109
Tel: 949.636.1391

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

**Miramar Brands Group, Inc.**, a California corporation,

Plaintiff,

v.

**Rag & Bone Holdings, LLC**, a Delaware company, **Guess?, Inc.**, a Delaware corporation, **WHP Global, LLC**, a Delaware company, **Bloomingdale's, LLC**, an Ohio company, **Nordstrom, Inc.**, a Washington corporation, **Evereve, Inc.**, a Minnesota corporation, **Revolve Group, Inc.**, a Delaware corporation, **URBN US Retail, LLC**, a Delaware company, **BOP LLC**, a Wisconsin company, **Rue Gilt Group, Inc.**, a Delaware corporation, and **Couponology, Inc.**, a New York corporation,

Defendants.

Case No. 8:26-cv-00011-MRA-BFM

**Plaintiff's Opposition To Motion To Stay Further Proceedings**

Date: July 28, 2026
Time: 10:00 a.m.
Ctrm: 9B

Honorable Mónica Ramírez Almadani

## <u>Introduction and Summary</u>

Plaintiff Miramar Brands Group, Inc. ("MBG") opposes hereby the Motion to Stay filed by Defendant Rag & Bone Holdings, LLC ("Rag & Bone"). *See* ECF Nos. 19-21 and 24. This Court is familiar generally with the stay request, which should be denied because of the important substantive differences between this action and the SDNY Action, ***and the urgency of MBG's need for and entitlement to a preliminary injunction***. *See* ECF No. 27 (Order Denying Rag & Bone's *Ex Parte* Application). In order to afford the relief necessary to protect not only MBG but the consuming public at large, this action must proceed in expedited fashion in order to reach the merits of MBG's Motion for Preliminary Injunction, which ***reasonably cannot be adjudicated in the SDNY Action*** (much less be adjudicated timely). *See* ECF No. 26 at 4-5 (explaining that because personal jurisdiction over MBG is lacking in the SDNY Action, this is the ***only*** proper venue and Court able to grant the requested preliminary injunction). As the Court explained in appropriately denying Rag & Bone's improper *ex parte* application to stay the preliminary injunction proceedings: "Defendant fails to meet [the *Mission Power*] standard . . . [and] ***cannot prevent Plaintiff from pursuing a Motion for Preliminary Injunction***." *See* ECF No. 27 at 2 (emphasis added). A preliminary injunction indeed is warranted, as demonstrated convincingly in MBG's pending Motion. *See* ECF No. 23 at 8 (noting the key, dispositive finding of "a likelihood of confusion" already has been confirmed by the U.S. Trademark Office).

## <u>Rag & Bone Mischaracterizes The SDNY Action</u>

Unlike Rag & Bone's mischaracterization, the SDNY Action does not "involve[] the same parties" as this action. Instead, but for Rag & Bone, none of the other ten (10) defendants in this action are parties in the SDNY Action, and the SDNY Action also includes another Rag & Bone entity not a party here.

Unlike Rag & Bone's mischaracterization, the SDNY Action does not "involve[] . . . the same issues." As Rag & Bone proposes, the singular common issue is "whether Rag & Bone's use of 'Miramar' in connection with the [Miramar] Collection is lawful," and "the legal issues are indistinguishable" between the actions. Not so. The issue ***in this action*** is whether Rag & Bone's ***new trademark use of MIRAMAR*** is trademark infringement entitling MBG to an injunction and damages. The issue in the SDNY Action is different—that is, only whether MBG's online takedown efforts constitute tortious interference with business relations, or entitle Rag & Bone to a requested declaratory judgment. The operative facts on these distinct issues are quite different, obviously. *See Bammeke v. GEICO Indem. Co.*, No. 25-9547, 2026 WL 1398506, at *6 (S.D.N.Y. May 19, 2026) ("Under New York law, the elements of a claim for tortious interference with prospective business advantage are: (1) a business relationship between the plaintiff and a third party; (2) defendant's knowledge of that relationship and intentional interference with it; (3) defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the relationship."). In the SDNY Action, MBG has pled no affirmative claims; instead, it has moved only for a dismissal or transfer, primarily for a lack of personal jurisdiction. For that reason, MBG has not been able to (and cannot) seek a preliminary injunction in the SDNY Action. It is a mischaracterization to assert the SDNY Action is "indistinguishable;" obviously, it is not.

Unlike Rag & Bone's mischaracterization, it has ***not*** used the word "Miramar" ***as a trademark*** in connection with its "13-year old 'Miramar' collection (the 'Miramar Collection')." Instead, not only does Rag & Bone's 2025 trademark application confirm its recent adoption of MIRAMAR as a proposed trademark (see ECF No. 22-23 at 17-19), but as Rag & Bone's executive Jennie McCormick admitted at an April 2026 hearing, the new trademark use of MIRAMAR is as "a

***sub brand*** of Rag & Bone." *See* ECF No. 22-11 at 46 (emphasis added).[1] The evidence is undisputed that Rag & Bone first began using MIRAMAR ***as a trademark*** only in mid-2025.[2] This ***new trademark use*** caused the dispute between the parties, beginning with MBG's successful efforts to enjoin the infringement online in compliance with the rigorous "takedown" procedures of Meta and Amazon. MBG's success in taking down Rag & Bone's infringement online led to Rag & Bone quickly filing the SDNY Action, and a perfunctory TRO within a matter of three days, before MBG could even brief the issues. The TRO halted MBG's "takedown" efforts online, but it was an erroneous and unlawful abridgment of MBG's free speech rights, including a violation of well-settled anti-SLAPP doctrine. *See, e.g., Shande v. Zoox, Inc.*, No. 22-5821, 2024 WL 2306284, at *6 (N.D. Cal. May 21, 2024) (takedown "protected activity under the anti-SLAPP statute because it was a communication to enforce Zoox's intellectual property rights"); *Cove USA LLC v. No Bad Days Enterprises, Inc.*, No. 20-2314, 2021 WL 3568251, at *4 (C.D. Cal. July 2, 2021) ("Communications made to enforce intellectual property rights . . . are protected by the anti-SLAPP statute even if the alleged infringer initiated the lawsuit."); *Complex Media, Inc. v. X17, Inc.*, No. 18-7588, 2019 WL 2896117, at *4 (C.D. Cal. Mar. 4, 2019) (communications that

---

[1] Most if not all exhibits referenced herein are attached with MBG's First Amended Complaint. *See* ECF No. 22.

[2] Although Rag & Bone argues repeatedly about its "longstanding and uninterrupted sale and promotion of its Rag & Bone ***Miramar Collection***" and "substantial consumer recognition and goodwill associated with ***its product line***," it conspicuously avoids misrepresenting that it used MIRAMAR ***as a trademark*** before mid-2025 (as opposed to a benign style name), because no such prior trademark use occurred. ***No prior trademark use*** is the key fact that vitiates Rag & Bone's "laches" contention in opposition to MBG's requested preliminary injunction. *See* ECF No. 23 at 3 n.2 ("MBG had no notice or knowledge of Rag & Bone's commercial use of MIRAMAR as a brand and intended trademark until late 2025, a few months after Rag & Bone began its nationwide re-branding campaign for its apparel.").

impact large online communities fall within anti-SLAPP protection). There is little to no room between these free speech prohibitions and Plaintiffs' injunction request in the SDNY Action.

Unlike Rag & Bone's mischaracterization, proceeding with this action would not "waste judicial resources." Instead, only this Court presently has jurisdiction to reach the merits of MBG's request for a preliminary injunction. This is the key issue before this Court, and the same issue has not been raised (and cannot be raised) in the SDNY Action.

Unlike Rag & Bone's mischaracterization, proceeding with this action would not "risk inconsistent judgments." Instead, because the issues for rulings by each court are preliminary, and distinct, there is no risk of inconsistent judgments. Any judgments in either case likely are years away.

Unlike Rag & Bone's mischaracterization, proceeding with this action would not "cause significant prejudice to Rag & Bone." Instead, simply reaching the merits of the trademark infringement issue in the context of MBG's requested preliminary injunction—in the only venue MBG could have the merits heard—cannot be characterized as "prejudice." The sooner Rag & Bone deals with the consequences of its infringement, the better for it, for MBG, and for the consuming public.

Unlike Rag & Bone's mischaracterization, it is obviously false that "MBG will suffer no prejudice from a stay." Instead, if this Court declines to reach the merits of MBG's Motion for Preliminary Injunction, MBG would suffer prejudice in the form of additional delay in the form of (a) waiting even longer for a ruling on the personal jurisdiction issue in the SDNY Action, (b) if the SDNY Action is dismissed, more delay having to re-file the preliminary injunction motion in this Court, and (c) if the personal jurisdiction is confirmed in the SDNY Action, more delay having to re-file the preliminary injunction motion in that court.

Unlike Rag & Bone's mischaracterization, MBG's Motion for Preliminary Injunction is replete with "evidence of actual consumer confusion, concrete business harm, [and] credible lost opportunities attributable to" Rag & Bone's trademark infringement. *See* ECF No. 23 at 9-10 (including declarations and exhibits cited therein and provided therewith).

Unlike Rag & Bone's mischaracterization, MBG does "fac[e] imminent [and] irreparable harm requiring immediate intervention from this Court." MBG is a very small company in Southern California, without the resources to defend itself in New York while at the same time pressing this action forward. Only once the frenetic pace of the SDNY Action subsided just recently could MBG promptly prepare and file its Motion for Preliminary Injunction in this Court.

## **Legal Standards**

A motion to stay an action in view of a "first-filed action" in another court requires practical consideration of the unique circumstances of the disputes, including here the important facts of (a) MBG's pending Motion for Preliminary Injunction, (b) the jurisdictional defect of the SDNY action, (c) the different parties, claims and issues. *See Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (first-to-file rule "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration"). "The most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Quijada v. Trajector, Inc.*, No. 26-3792, 2026 WL 1810156, at *2 (C.D. Cal. June 18, 2026) (quoting *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991)).

For example, in *Stetter v. Blackpool, LLC*, No. 09-1071, 2009 WL 2424657, at *2 (D. Ariz. Aug. 7, 2009), the district court rejected a similar attempt to side-step and delay an urgent request justifying a preliminary injunction based on the first-to-

file rule. *Id.* (citing *Pacesetter*) (first-to-file rule requires "same parties and issues"). As the district court reasoned:

> This rule does not require the Court to dismiss or stay this case or dissolve the Preliminary Injunction. The earlier filed action upon which Defendant Gould bases his argument is a state-court lawsuit filed in Hawaii by Blackpool, Ltd. and Blackpool, LLC against Plaintiff Stetter and a John P. Dunbar. The complaint concerns tortuous actions allegedly taken by Plaintiff and Mr. Dunbar against these entities. This case, by contrast, is between Plaintiff and Defendants Blackpool, LLC, Bickley, Gould, and various financial institutions. This case concerns the $350,000 that Plaintiff provided to Blackpool. It also concerns the proceeds of those funds. ***Because the parties and issues in the two lawsuits are different, the first-to-file rule does not apply*** and does not provide a basis for dissolving the Preliminary Injunction.

*Id.* ("The Preliminary Injunction remains in effect."). The parties and issues are similarly different here, supporting the same result.

Further, the first-to-file rule may apply only if the defendant in the first-filed action is properly subject to that court's jurisdiction. *See In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018) (first-filed court must be a district where the second-filed action "might have been brought"). As this Court explained in *Dayals (Fiji) Artesian Waters Ltd. v. Fiji Water Co., LLC*, No. 07-3649, 2007 WL 10130062, at *5 (C.D. Cal. Oct. 23, 2007), the first-to-file rule "gives priority . . . to the party who first establishes jurisdiction." *Id.* (citing *Intuitive Surgical, Inc. v. Cal. Institute of Tech.*, No. 07-63, 2007 WL 1150787, *2 (N.D. Cal. Apr. 18, 2007)); *see Pacesetter*, 678 F.2d at 95 ("Normally sound judicial administration . . . [favors] the court which first acquired jurisdiction . . . ."). In *DUSA Pharms., Inc. v. River's Edge Pharms., LLC*, No. 06-1843, 2006 WL 1320049, at *2 (D.N.J. May 15, 2006), the district court properly issued a preliminary injunction where (as here) there was a pending

motion to dismiss the first-filed action. *See id.* (first-filed action facing dismissal "not a bar to . . . issuing the instant preliminary injunction").

Finally, this Court's wide discretion includes several other applicable exceptions to the first-filed rule, including "equitable reasons such as bad faith, anticipatory suit, and forum shopping." *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary."). "Other circumstances may also warrant a rejection of the first-to-file rule, such as factors involving convenience to the parties or sound judicial administration." *Power Integrations, Inc. v. ON Semiconductor Corp.*, No. 16-6371, 2017 WL 1065334, at *3 (N.D. Cal. Mar. 21, 2017).

**<u>This Court's Broad Discretion Allows Reaching The Merits</u>**

Rag & Bone argues in its motion to stay that "the SDNY Action was filed first" (which is true), but Rag & Bone ignores the fact that MBG's Rule 12(b)(2) motion to dismiss establishes that personal jurisdiction is not yet properly exercised in the SDNY Action. In the Second Circuit, as in the Ninth Circuit, plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss," the court in the SDNY Action has not yet confirmed that Rag & Bone has done so, and it is unlikely the SDNY Action may properly proceed. *See Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 440 (S.D.N.Y. 2008) (quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). Further, the lack of personal jurisdiction means that technically, the SDNY Action is not "first-filed." *See supra* (citing *Bozic*, *Dayals*, and *DUSA*); *see also Pacesetter*, 678 F.2d at 95 ("Normally sound judicial administration . . . [favors] the court which first acquired jurisdiction . . . ."). The lack of jurisdiction also undermines the propriety of the discovery, depositions and other activity in the SDNY Action, which the New York court never should have allowed before ruling on MBG's motion to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A) (Rule 12 motion tolls deadline to file answer).

Next, despite Rag & Bone's argument that the parties are the same in the two actions, they are not. *See supra* ("[B]ut for Rag & Bone, none of the other ten (10) defendants in this action are parties in the SDNY Action, and the SDNY Action also includes another Rag & Bone entity [called RB Topco Sagl] not a party here."). Next, Rag & Bone argues that the issues are "substantially similar for purposes of the first-to-file rule," but they are not. See supra (trademark infringement different from "whether MBG's online takedown efforts constitute tortious interference with business relations, or entitle Rag & Bone to a requested declaratory judgment").

Next, Rag & Bone argues incorrectly that "MBG is obligated to assert its claims in the SDNY Action because MBG's claims for infringement and unfair competition are compulsory counterclaims." This argument again misses the key procedural point of personal jurisdiction, which at present is lacking in the SDNY Action. For that reason, MBG has no obligation to plead any counterclaims.

Lastly, Rag & Bone argues about prejudice in the form of being "forced to defend" this action on the merits, which argument was mooted by this Court's prior ruling. *See* ECF No. 27 at 2 ("Defendant has not shown it will be irreparably prejudiced, as opposed to being inconvenienced . . . ."). That is, Rag & Bone must respond on the merits to MBG's Motion for Preliminary Injunction. The related argument that "MBG will not be harmed by a stay" is nonsense, because obviously a stay would deny MBG its right to have its Motion for Preliminary Injunction decided on the merits, which is urgent and essential to its survival as a business and to addressing likelihood of confusion among the consuming public.

This Court should consider the other equitable factors discussed in the case law, including (a) bad faith, (b) anticipatory suit, (c) forum shopping, (d) convenience to the parties, and (e) sound judicial administration. *See supra* (citing *Alltrade* and *Power Integrations*). Concerning bad faith, anticipatory suit and forum shopping, the pre-suit correspondence makes clear that MBG was planning to sue Rag & Bone for trademark infringement, and that such suit likely would be filed

near MBG in Southern California. *See, e.g.*, ECF No. 22-23 at 6 (October 2025 letter concluding that MBG would "escalate its global enforcement efforts even further and pursue emergency injunctive relief"). Rag & Bone also knew MBG was a very small company not able rapidly to prepare and file suit. Within a few weeks, Rag & Bone filed the SDNY Action in its home city (requiring MBG to defend itself all the way across the country), which at least supports an inference of a bad faith, anticipatory suit, and forum shopping. Concerning the convenience of the parties, clearly MBG and its counsel (and many third party witnesses) are here in Southern California, while Rag & Bone is a large entity with people everywhere, including its lead counsel in Chicago and Washington, D.C., along with New York. Concerning the goal of sound judicial administration, based on MBG's Motion for Preliminary Injunction, this Court should recognize that only it could promptly remedy the irreparable harm resulting from Rag & Bone's widespread trademark infringement. The harm is not only destroying MBG's longstanding MIRAMAR® brand and jeopardizing MBG's viability as a business, but it threatens real-world consumer confusion. Addressing the merits of MBG's injunction request promptly is a principal *raison d'etre* of any judicial body.

## **Conclusion**

Based on the foregoing, Plaintiff MBG respectfully requests that this Court should deny the motion to stay.

Respectfully submitted,

Dated: June 30, 2026

**SML AVVOCATI P.C.**

By: /s/ Stephen M. Lobbin
Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-6.2 ("Certificate of Compliance"), the undersigned counsel for Plaintiff certifies hereby that the foregoing document complies with the type-volume limitation of L.R. 11-6.1. Specifically, the undersigned certifies that the foregoing brief contains 3053 words, which complies with the 7,000 word limit of L.R. 11-6.1.

/s/ Stephen M. Lobbin

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2026, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

/s/ Stephen M. Lobbin